UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

LACEY M. PATCHETT,

        Plaintiff,

    v.                                   CAUSE NO. 4:21-CV-45 DRL-JEM

KILOLO KIJAKAZI[1],
Commissioner of the Social Security
Administration,

        Defendant.

## OPINION AND ORDER

Lacey M. Patchett appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits and supplemental security income. Ms. Patchett requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court remands the Commissioner's decision.

## BACKGROUND

Ms. Patchett suffers from a variety of physical and mental health impairments. Ms. Patchett's severe impairments include degenerative disc disease of the lumbar spine with L5-S1 neuropathy, hypertension, obesity, chronic pain disorder, depression, anxiety, and post-traumatic stress disorder (PTSD) [R. 40-41]. Ms. Patchett also suffers from the non-severe impairments of migraine headaches, agoraphobia, otalgia, skin lesions, and asthma [R. 41]. The ALJ found that Ms. Patchett also alleged impairments that were found to be non-medically determinable impairments, including ADHD, fibromyalgia, irritable bowel syndrome, pink eye, gastrointestinal symptoms, and right hip degeneration [R. 41-42].

---

[1] Kilolo Kijakazi is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Ms. Patchett filed a Title II application and a Title XVI application for benefits on January 17, 2019, alleging disability beginning March 1, 2018 [R. 38]. Her application was denied initially on February 20, 2019, and again on reconsideration on June 5, 2019 [R. 94, 108]. Her claims were heard by an Administrative Law Judge (ALJ) in a telephone hearing on June 17, 2020 [R. 38]. The hearing was held via telephone as a result of the extraordinary circumstances presented by the COVID-19 pandemic, and Ms. Patchett agreed on the record that she did not object to the hearing proceeding in this manner [*Id.*]. In a July 29, 2020 decision, the ALJ denied Ms. Patchett's petition on the basis that she could not show that she was disabled as defined by the Social Security Act [R. 35-37, 48-49].

Ms. Patchett last met the insured status requirements of the Social Security Act on June 30, 2021 [R. 40]. The ALJ found that through the date last insured, Ms. Patchett had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations: she could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl [R. 43]. She could have no more than occasional exposure to wetness or hazards, such as dangerous moving machinery or unprotected heights and no commercial driving; she could understand, remember, and carry out simple tasks; she could make simple work related decisions and deal with occasional changes in work processes and environment [R. 43-44]. She shouldn't work with the general public, but she could have occasional interaction with coworkers and supervisors [R. 44]. The ALJ found that Ms. Patchett was unable to perform any past relevant work [R. 48]. However, the ALJ found that she could perform a significant number of jobs in the national economy [R. 48-49]. This decision became final when the Appeals Council denied Ms. Patchett's request for review [R. 24-26].

STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's

2

decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Patchett challenges the ALJ's conclusion that she is not totally disabled. She advances four arguments of error: (1) the ALJ erred in assessing her migraines and upper extremity functioning; (2) the ALJ failed to assess her mental impairments properly; (3) the ALJ erred in analyzing opinion

3

evidence; and (4) the ALJ erred in determining the physical RFC. The court addresses these points in turn.

Ms. Patchett argues that the ALJ didn't consider her migraines properly and instead found that her migraines didn't meet the durational requirement. In the decision, the ALJ found that Ms. Patchett only alleged migraines for the last six months, and that they occurred two to three times a week and lasted for two days at a time [R. 41]. The ALJ found that, though Ms. Patchett testified that she took Topamax, there were no reported limitations in the record for a 12-month duration, and mental status examinations showed no deficits in cognitive functioning [R. 41]. Finally, the ALJ noted that Ms. Patchett's neurological exam was normal, and that there were no neurological deficits [R. 41]. The ALJ oddly relied on intact sensation, motor function, coordination, and gait, as well as normal strength in the claimant's lower extremities in finding her migraines to be non-severe, though there is no indication that she alleged her migraines caused any limitations in these areas [R. 41]. Relatedly, the ALJ implied that Ms. Patchett had a non-severe seizure disorder, noting that "[a]lthough EMG findings showed abnormal results, she was not on seizure medication…. Additionally, there were no seizures shown for a 12-month duration" [R. 41].

A severe impairment is defined as an impairment that significantly limits a claimant's physical or mental ability to complete basic work activities. 20 C.F.R. §§ 404.1521, 416.921. To qualify for disability, a claimant must have a severe impairment that either has lasted or is expected to last for a period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. There are errors and seeming misstatements of the evidence in the ALJ's analysis of Ms. Patchett's migraines and the finding that they did not meet the durational requirement.

As an initial issue, the ALJ only discussed part of Ms. Patchett's testimony about her migraines. The ALJ correctly noted that she testified that her migraines had occurred two to three times a week over the past six months [R. 75], but the ALJ seemingly passed over her testimony that her migraines

had been occurring for at least two years beforehand and that they had become more frequent and worse in the last six months [R. 75]. Moreover, the medical record includes multiple references to her migraines, noting that she complained of migraines for years; and the record indicates that the migraines were associated with her anxiety [R. 327-28, 502, 506, 508, 609-10, 616, 656, 696]. She reported that her migraines caused nausea and vomiting [R. 75, 327-28].

Furthermore, an impairment need not have lasted for twelve months in the medical record to meet the durational requirement. To the contrary, an impairment meets the duration requirement if it is expected to last for a period of twelve consecutive months, even if it had not lasted for twelve months at the time of the decision. *See* 20 C.F.R. §§ 404.1509, 416.909; SSR 82-52, 1982 SSR LEXIS 19, at 2-3 (1982). Even if the ALJ found that Ms. Patchett's migraines didn't cause limitations for twelve months prior to the decision, the ALJ didn't properly consider whether her migraines caused limitations that would continue for at least twelve months.

Starting on June 17, 2019, Ms. Patchett reported that she was three days into a migraine during her consultative examination [R. 501]. She reported that her pain was 10/10, and she had a "visual disturbance early blind-spot," which the examiner noted required further evaluation [R. 502]. On June 25, 2019, she reported that her migraine headaches made her vomit, and they occurred once every two weeks, albeit proving worse in the winter [R. 508]. She reported that Tylenol and ibuprofen didn't help [R. 508]. She also said she had a piercing that used to help with migraine pain, but its efficacy had decreased over time and was no longer as helpful [R. 508].

By January 7, 2020, Ms. Patchett continued to report headaches, and noted that her eyes "veer[ed] to the left" [R. 609]. She also reported that her headaches caused a spot in the back of her head to twitch [R. 609-10]. On April 8, 2020, Ms. Patchett reported she started taking Topamax for her migraines, but that she "ha[d] not found it particularly helpful" [R. 656]. On April 21, 2020, Ms. Patchett was referred to a neurologist for her chronic headaches, which she reported made her dizzy

and lightheaded with near blackout episodes [R. 696]. The neurologist suggested an EEG test to check for seizure activity or nonepileptic spells in relation to her migraines [R. 697]. Ms. Patchett underwent an EEG study on May 11, 2020 [R. 691]. The EEG was abnormal, showing "sharp wave seizure activity," and the neurologist noted that "clinical correlation [was] warranted" [R. 691].

The ALJ didn't discuss the correlation of the EEG with Ms. Patchett's migraine headaches, and the ALJ instead chose to treat the abnormal EEG as possible evidence of a seizure disorder. The ALJ found that the EEG's[2] abnormal results were contradicted by a lack of seizure medication and a lack of seizures during a twelve-month duration [R. 41]. But, as the ALJ admitted, there is no indication in the medical record that any medical professional believed Ms. Patchett was suffering from a seizure disorder or treated her as if she was suffering from seizures [R. 41]. Rather, the EEG was requested by Ms. Patchett's neurologist as an attempt to find answers to her chronic migraines [R. 691-97].

The abnormal EEG appears to be in relation to Ms. Patchett's migraines rather than an indication of either seizures or a seizure disorder, but it remains unclear on this record how the abnormal EEG correlated to Ms. Patchett's migraines. When an ALJ lacks enough information about medical information to evaluate a claimant's impairments properly, she should enlist the help of medical professionals and not play doctor. Here, to evaluate Ms. Patchett's impairments based on the abnormal EEG and to discern the EEG's meaning, the ALJ should have utilized a neurologist or other professional to develop the record. The ALJ has just that duty. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2013); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). ALJs may "contact treating physicians for further information when the information already in the record is inadequate to make a determination of disability." *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) (quotations omitted). Ms. Patchett's abnormal EEG was not considered as evidence related to her migraines despite her testimony that she would be receiving

---

[2] The ALJ refers to an EMG, but the treatment note states that it was an EEG study [R. 41, 691].

6

further testing that may help establish the severity of her condition [R. 76]. The ALJ didn't properly and fully consider the evidence related to Ms. Patchett's reported migraines.

In all cases where the ALJ denies benefits on the basis of insufficient duration, the ALJ "must state clearly in the denial rational" that there was or is expected to be sufficient restoration of function within twelve months of the impairment's onset to such a degree that either "there is or will be no significant limitation of the ability to perform basic work-related function" or "that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [significant gainful activity], considering pertinent vocational factors." SSR 82-52, 1982 SSR LEXIS 19, at 9. The ALJ did not do so here, as the ALJ ignored the impact of Ms. Patchett's migraines on her residual functional capacity (RFC) as it related to her nausea, vomiting, and continued effect on her mental impairments. The medical record indicates that her migraines and mental impairments have similar symptoms and are possibly connected, and the ALJ did not consider how the combined effect of her migraines and anxiety might affect her RFC [R. 75, 327, 330, 676]. Though it remains the claimant's obligation to explain why her impairments are disabling, *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), the ALJ cannot ignore Ms. Patchett's migraines merely because the ALJ found that her migraines alone were not disabling. The impact of her migraines in combination with her other impairments may be important to her claim of disability. *See* SSR 96-8p, 1996 SSR LEXIS 5, at 14-15; *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

Here, the ALJ did not consider the combined effects of her migraines and anxiety. At least one treatment note linked Ms. Patchett's anxiety to her headaches [R. 327, 330], and both Ms. Patchett's testimony and multiple treatment notes indicate that her anxiety and migraines cause similar symptoms [R. 75, 321, 327, 340, 508, 652, 656, 666, 676]. Other treatment notes indicate that her mental health symptoms worsen her pain, and that her anxiety and panic attack increases occurred simultaneously with an increase in migraines [R. 508, 656-57, 676]. The ALJ didn't consider how her

migraines and mental impairments in combination might exacerbate the symptoms of both impairments.

The ALJ said that there were no reported limitations found in the record for a twelve-month duration [R. 41]. The regulations required the ALJ not only to consider whether the limitations have occurred for at least twelve months, but also whether the limitations could be expected to occur for at least twelve months. SSR 82-52, 1982 SSR LEXIS 19, at 2-3. The ALJ, however, also did not consider the evidence of reported limitations in the medical record. Though the ALJ noted that Ms. Patchett's mental status examinations showed normal cognition and memory, as well as intact motor function and strength with no neurological deficits, the ALJ passed over other evidence of migraines in the record. This may be, perhaps, because her migraines and her anxiety caused similar symptoms, yet the ALJ didn't consider that her migraines may have caused limitations outside of cognition, memory, motor function, or strength. For instance, Ms. Patchett frequently reported issues with nausea and vomiting, which she attributed to both anxiety and headaches/migraines [R. 75, 321, 327, 340, 508, 656, 657, 666, 676]. Moreover, two separate treatment notes indicated vision abnormalities during migraines [R. 502, 609-10]. Ms. Patchett also reported that she was to undergo further neurological testing, as her original test results were consistent with her complaints of headaches [R. 76]. The ALJ did not consider these symptoms or the combined effect of her physical pain and mental impairments on her RFC. Based on Ms. Patchett's referral to neurology, her testimony to medication changes and an increase in headaches, and her abnormal EEG, the ALJ should have considered whether this apparent increase in migraine attacks and symptoms could cause limitations that would persist for at least twelve months. This error requires remand, as a proper consideration of Ms. Patchett's migraines may affect the RFC determination.

Ms. Patchett makes several other arguments regarding her mental impairments, medical opinions, and the RFC determination. However, because the ALJ erred in analyzing Ms. Patchett's

migraines, the court need not address these arguments. Proper analysis of Ms. Patchett's migraines and her symptoms and limitations related to her migraines may alter both the RFC and the ALJ's analysis of Ms. Patchett's other impairments and the medical opinion evidence. On remand, the ALJ should properly analyze Ms. Patchett's migraines and discuss its effects on her other impairments and the RFC.

## CONCLUSION

The court finds that the ALJ erred in analyzing Ms. Patchett's migraines. The court thus GRANTS Ms. Patchett's request for remand [ECF 15] and REMANDS the Commissioner's decision.

SO ORDERED.

July 28, 2022                                       *s/ Damon R. Leichty*
                                                    Judge, United States District Court